IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LYNETTA SHEPHERD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 04-1336 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

The plaintiff, Lynetta Shepherd, filed this action to obtain judicial review of the defendant Commissioner's final decision denying her application for disability insurance benefits under 42 U.S.C. §§ 405(g), and her application for supplemental security income (SSI) benefits under 42 U.S.C. § 1382(c) *et seq.* Plaintiff's applications for benefits, filed on April 25, 2003, were denied initially and upon reconsideration by the Social Security Administration. At the plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on January 6, 2004. On March 10, 2004, the ALJ issued a decision finding that plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff subsequently filed a complaint in this Court, seeking review of the Commissioner's final decision. Plaintiff contends that the ALJ's determination that she is

not disabled is a substitution of the ALJ's opinion for that of the medical reports. For the reasons set forth below, the Commissioner's decision is affirmed.

## Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405 (g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Drummond v. Commissioner of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Secretary of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286. In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286). If reversal is warranted, a court may immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes

a plaintiff's entitlement to benefits." <u>Faucher v. Secretary of Health and Human Serv.</u>, 17 F.3d 171, 176 (6th Cir. 1994).

### Facts

Plaintiff is a fifty-six year old female with a high school education. She alleges disability beginning January 1, 2001, due to thyroid problems, shortness of breath, a nervous condition, and an irregular heartbeat. (R. at 63, 88.) Her past relevant work experience includes jobs as a cashier, a department manager, a house cleaner, a packer at a factory, and a school bus driver. Although Plaintiff alleges her disability began on January 1, 2001, she did not seek medical treatment until December 27, 2001. (R. at 138.)

On December 27, 2001, Plaintiff was examined by L. Cunningham, M.D., for complaints of chest tightness and discomfort. A cardiovascular exam indicated regular rhythm, although Dr. Cunningham opined she was "slightly tachycardic at the present time." Dr. Cunningham also noted Plaintiff had an enlarged thyroid and her blood pressure was 122/96. (R. at 138.) His impressions included unexplained chest pain, hypertension, thyromegaly, and tachycardia. (R. at 139.) An electrocardiogram (EKG) was abnormal. (R. at 144.)

On December 28, 2001, Plaintiff went to the Methodist Lebonheur Hospital emergency room in Jackson, Tennessee. Plaintiff denied having any chest pain, but she stated that she felt like her heart was racing. (R. at 181.) T. Geno, M.D., diagnosed acute

3

hyperthyrodism. (R. at 178). He ordered a thyroid scan which revealed homogeneously enlarged thyroid glands consistent with Graves disease. (R. at 179.)

On April 5, 2003, Seth Cohen, M.D., examined Plaintiff. He found she had a regular heart rate and rhythm, without jugular vascular distention or murmurs. Dr. Cohen opined she had normal mobility and could get onto and off of the examining table without difficulty. He noted that Plaintiff's uncorrected visual acuity was 20/50 for the right eye and 20/70 for the left eye. (R. at 155-56.)

On April 28, 2003, Plaintiff returned to the emergency room complaining of a severe headache and a racing heart. Plaintiff reported that she hadn't taken her thyroid medication (which she referred to as the pills that she was given to calm down her heart) because she couldn't afford them. (R. at 171.) Laboratory tests taken on July 8, 2003, revealed that Plaintiff had Graves disease. (R. at 165-68.) On August 14, 2003, Plaintiff went to the Jackson Madison County General Hospital as an outpatient, due to her elevated thyroid level. Plaintiff's thyroxine result was verified. (R. at 186-87.)

Jimmy K. Pratt, M.D., reported on December 12, 2003, that he saw Plaintiff on January 9, 2002, July 8, 2003, and August 19, 2003. (R. at 164.) Dr. Pratt reported that Plaintiff has been diagnosed with hyperthyroidism and Graves Disease. He also stated that Plaintiff could not afford her medications at the present time. (R. at 164-65.)

A report regarding Plaintiff's bone scan taken on September 15, 2004, was submitted to the Appeals Council, but not the ALJ. (R. at 203.) The scan revealed moderate

degenerative disc disease and severe osteoarthritis throughout the mid and lower lumbar spine. (R. at 203.) On September 20, 2004, Plaintiff was examined by Dr. Gooch of the Purihin Clinic. Dr. Gooch opined that Plaintiff's thyroid gland was swollen. He diagnosed her with Graves disease, reported anemia, degenerative joint disease, and a cyst. (R. at 196.)

In Plaintiff's Application for Disability Benefits, dated January 31, 2003, she claimed, "I was terminated from my job in early 1999 and I did not work any since 1999." (R. at 65.) However, in Plaintiff's Disability Report, dated January 28, 2003, Plaintiff stated that she stopped working December 18, 2002. In the same report, Plaintiff also mentioned that her conditions caused her to work fewer hours, change her job duties, and make job-related changes. Plaintiff explained, "I have been cleaning houses on and off when I feel like it." (R. at 88.)

During Plaintiff's testimony at an administrative hearing on January 6, 2004, she reported that she continued to work cleaning houses and offices until November or December 2002. (R. at 209-10.) It is notable that Plaintiff's alleged onset date was January 1, 2001, yet she continued to work until December of 2002.

Plaintiff also testified that she could not work due to knee problems that prevented her from standing for a long period of time, thyroid problems, Graves disease, heart palpitations, and visual changes. (R. at 212-14.) This required moving furniture at times, sweeping and other basic cleaning tasks. (R. at 210.) Plaintiff testified that she is too weak to do her own cleaning. (R. at 216-17.) Plaintiff also stated that she thinks she could work

at an "old folks' home or some place like that," but that they are not currently hiring. (R. at 223.)

On March 10, 2004, the ALJ determined that Plaintiff was not disabled. In particular, ALJ Zisook found that: (1) Plaintiff met the special disability insured status requirements under Title II of the Act as of January 1, 2001, her alleged disability onset date, and she continues to satisfy such requirements through at least the date of this decision; (2) Plaintiff has not engaged in substantial gainful activity since January 1, 2001; (3) Plaintiff's impairments are a combination of no more than slight abnormalities that have had no more than a minimal effect on her ability to work; (4) Plaintiff fails to establish the existence of "severe" impairments in the record; and (5) Plaintiff was not under a "disability" at any time through the date of this decision, as defined in the Social Security Act in 20 CFR §§ 404.1520(c) and 416.920(f). (R. at 28.)

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity due to a "physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A). The initial burden of going forward is on the claimant to show that she is disabled from engaging in his former employment; the burden then shifts to the Commissioner to demonstrate the existence of

available employment compatible with the claimant's disability and background. 42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that he has done in the past will not be found to be disabled.
5. If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989). In this case, analysis proceeded to the second step, where the ALJ found that Plaintiff did not meet her burden of proving the existence of a severe, medically determinable impairment which significantly limited her ability to perform basic work activities.

7

The dispute in this case involves whether the Plaintiff met her burden of proving the existence of a severe, medically determinable impairment which significantly limited her ability to perform basic work activities. A review of the record reveals that no objective medical evidence exists that illustrates Plaintiff's medical problems imposing vocationally restrictive limitations. While Dr. Bounds, a state agency consultant, noted that Plaintiff's lack of distant visual acuity was a severe impairment, as noted by the ALJ, the record did not demonstrate that Plaintiff's medical problems imposed vocationally restrictive limitations. (R. at 25, 138-39, 162, 164-66, 172-73, 183-84.) None of Plaintiffs' treating physicians noted that she had any problems or limitations due to a visual impairment that would affect her ability to work. (R. at 138-39, 162, 164-66, 172-72, 182-82.)

Plaintiff asserts that the ALJ should have found her Graves disease was a severe impairment, as it was demonstrated by an elevated thyroid blood test. (R. at 140.) Again, the records do not illustrate a connection between Plaintiff's elevated thyroid blood test and vocationally restrictive limitations. Even Dr. Bounds noted that Plaintiff's thyroid condition was not severe and that there was no evidence of decompensations. (R. at 162.)

While it is unfortunate that Plaintiff's objective medical records do not link her medical conditions to any vocationally restrictive limitations, the ALJ is bound by the regulations, which provide that it is the plaintiff's responsibility to provide medical evidence to show that he or she has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1512, 404.1520(c). If an

8

individual fails to submit the medical and other evidence that is needed, the ALJ is permitted to make a decision based on the information available in the case. 20 C.F.R. § 404.1516.

## Conclusion

Plaintiff has failed to meet her burden, thus the ALJ was warranted in making his disability determination based on the information made available to him. Because the record contained no evidence of a medically determinable severe impairment that is linked to a vocationally restrictive limitation, the ALJ properly terminated the sequential evaluation process at step two and found Plaintiff not disabled. Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

13 July 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 13 in case 1:04-CV-01336 was distributed by fax, mail, or direct printing on July 14, 2005 to the parties listed.

---

Beth S. Bates
WEST TENNESSEE LEGAL SERVICES, INC.
210 West Main St.
Jackson, TN 38301

Lynnetta Shepherd
482 State Rd.
Humboldt, TN 38343

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT